**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| LAUREEN ROBINSON, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>MUNSON HEALTHCARE,<br><br>DEFENDANT. | CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL ENCLOSED |

## INTRODUCTION

1. This case arises from a data breach. Defendant Munson Healthcare (hereafter "Munson") is a health care provider that manages and maintains medical records as part of its business operations, lost control over highly sensitive protected health information ("PHI") in a cybersecurity breach ("Data Breach"). Despite recognizing the risk that security breaches pose to the information it maintains in its systems, and its responsibility to quickly warn them about data breaches, Munson failed to implement reasonable security measures to safeguard PHI.

2. Munson is well-aware it is responsible for safeguarding highly sensitive PII and PHI. Munson stated "Munson will not provide your information to any other person or company for marketing any products or services other than Munson products or services unless you have signed an authorization."[1]

[1] https://www.munsonhealthcare.org/patients-visitors/notice-of-privacy-practices (last retrieved February 25, 2026).

3. Munson failed its responsibilities. As set forth in the notice Munson provided to its patients on or about January 12, 2026, a third party hired by Munson allowed sensitive medical records to be exposed to criminals.

4. Plaintiff Laureen Robinson was a victim of the data breach. She brings this action on behalf of herself and all others similarly situated, seeking damages for the injuries that Defendant's negligence have and will cause, as well as injunctive relief to ensure that the data Defendant continues to store will be protected by reasonable data security practices going forward.

**PARTIES**

5. Plaintiff Laureen Robinson is a resident of Cedar, Michigan, where she intends to remain.

6. Defendant Munson Healthcare is a Michigan Nonprofit corporation with its principal place of business at 1105 Sixth Street, Traverse City, Michigan 49684.

**JURISDICTION AND VENUE**

7. This Court has personal jurisdiction over Defendant Munson because it has its principal place of business located in Traverse City, Michigan, within this District, and because it transacts substantial business in this District.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because at least one member of the proposed class is a citizen of a state different from Defendant, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, the proposed class consists of more than 100 members, and none of the exceptions under the statute apply.

9. Venue is proper in this District, and in this Division, because Munson's principal place of business is located in Grand Traverse County, Michigan. See 28 U.S.C. § 1391(b)(1)–(2); W.D. Mich. LCivR 3.2.

## FACTUAL ALLEGATIONS

### A. Protected Health Information ("PHI").

10. The Health Insurance Portability and Accountability Act of 1996, generally referred to as "HIPAA," and its implementing regulations provide restrictions on the ability of any entity that possesses health care-related information on a patient to use or disseminate that information.

11. "Health Information" is defined under the HIPAA regulations as "any information, including genetic information, whether oral or recorded in any form or medium, that: (1) [i]s created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103.

12. Likewise, "Protected Health Information" is defined as "individually identifiable health information . . . that is: (i) Transmitted by electronic media; (ii) Maintained in electronic media; or (iii) Transmitted or maintained in any other form or medium." *Id.*

13. "Covered Entit[ies]" subject to HIPAA requirements include "[a] health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."

14. Munson Healthcare is a Covered entity under HIPAA regulations, as it is a health care provider that transmits health information in an electronic form.

**B. Munson allowed Plaintiff's data to be accessed in a cybersecurity incident.**

15. According to the data breach notice that Plaintiff received, at some unknown point, Munson retained "Cerner"[2] to maintain electronic healthcare records on behalf of Munson. See Exhibit 1.

16. On or about January 22, 2025, Cerner suffered a data breach, in which an undisclosed third-party accessed Cerner's systems and compromised the data it retained on behalf of Munson.

17. Based on the disclosures in the Notice, information pertaining to Plaintiff and Class members was part of the data accessed by an unauthorized external party in the Data Breach.

18. The specific information that was potentially compromised includes: name, social security number, and patient medical records, including medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment. Exhibit 1.

19. Because the incident targeted personally identifying healthcare information, it is reasonable to infer that bad actors may use victims' data for fraudulent purposes, including identity theft, financial fraud, and other misuse of personal information.

20. Munson has stated that it was not informed of the breach until August 1, 2025, and that the delay in informing affected individuals was a result of Cerner's decision that

---

[2] On information and belief, the reference to "Cerner" in the Notice of Breach refers to Oracle Health, which purchased Cerner Corporation in 2022. See https://www.hfsresearch.com/research/oracle-kicking-cerner-decisive/ (last retrieved February 26, 2026).

notification "could have impeded their investigation." This decision means that there was a full year in which patients had no idea their information was compromised, and thus had no way of protecting their personal information.

21. Moreover, despite the desire to engage in a thorough investigation, Cerner and Munson provide no information regarding how the breach occurred, who might be responsible, or what uses the stolen information was put. This provides no confidence that Cerner has upgraded the clearly insufficient systems that allowed the information to be stolen in the first place, nor that Munson has a handle on the status of its medical records.

22. Munson advised Plaintiff and Class members enroll in identity theft protection services. Munson's offer of only twenty-four months of identity theft protection is inadequate. Stolen PII and PHI retain value on the black market for years, meaning the risk of identity theft and fraud extends well beyond the limited monitoring period provided.

**B. Plaintiff and Other Similarly Situated Persons Have Suffered a Privacy Injury as a Result of Munson's Handling of the Data Breach.**

23. Plaintiff and other similarly situated persons suffered a concrete, legally cognizable privacy injury as a result of the data breach—namely, the release of highly sensitive information that any reasonable person would prefer to be kept private.

24. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII and PHI that can be directly traced to Munson.

25. On information and belief, Munson failed to adequately supervise the vendors to which it entrusted patient medical records, causing it to lose control over PII and PHI. This is evidenced by the vendor's failure to prevent the Data Breach and stop cybercriminals from accessing PII and PHI.

26. Further, the Breach Notice provides no information regarding the true causes of the breach, those responsible, or who might have access to the compromised data. This suggests that Munson and its vendor may not even have been able to determine the full scope of the Data Breach.

27. As a result of Munson's failure to prevent the Data Breach, Plaintiff and others similarly situated have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII and PHI is used;
b. The diminution in value of their PII;
c. The compromise and continuing publication of their PII and PHI;
d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;
e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;
f. Unauthorized use of stolen PII and PHI; and
g. The continued risk to their PII and PHI, which remains in the possession of Munso nand is subject to further breaches so long as Munson fails to undertake the appropriate measures to protect the PII and PHI in their possession.

28. Those injuries (and the breach itself) were highly foreseeable consequences of Munson's negligence, particularly in light of the types of PII and PHI it stored about Plaintiff and the Class. "[H]ackers are likely to be drawn to databases containing information which has a high value on secondary black markets," such as "identifying and financial data." Mark

Verstraete & Tal Zarsky, *Optimizing Breach Notification*, 2021 U. ILL. L. REV. 803, 854–55 (2021). Consequently, "relevant and rational firms should engage in greater security investment and reduced collection—all steps to limit the prospects of a potential breach and subsequent notification." *Id.* at 855.

29. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00, depending on the type of information obtained.

30. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

31. It can take victims years to spot identity or PII theft, giving criminals plenty of time to mine that information for cash.

32. One such example of criminals using PII for profit is the development of "Fullz" packages.

33. Cyber-criminals can cross-reference multiple sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

34. The development of "Fullz" packages means that stolen PII from the Data Breach can be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the

PII stolen by the cyber criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That may well be what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

35. Munson's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and other similarly situated person's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

36. Moreover, when a breach involves medical information as in this case, an injury has *already occurred* because the victim inherently suffered a privacy injury.

37. Privacy injuries are concrete. As Justice Brandeis once observed, an invasion of privacy can subject victims "to mental pain and distress, far greater than could be inflicted by mere bodily injury." Louis D. Brandeis & Samuel D. Warren, The Right to Privacy, 4 HARV. L. REV. 193, 196 (1890).

38. Medical data breaches cause privacy injuries because they expose inherently private information without consent. Indeed, "[p]atients are highly sensitive to disclosure of their health information," particularly because PHI "often involves intimate and personal facts, with a heavy emotional overlay." Peter A. Winn, *Confidentiality in Cyberspace: The HIPAA Privacy Rules and the Common Law*, 33 RUTGERS L.J. 617, 621 (2002). Unsurprisingly, then, empirical evidence demonstrates that "[w]hen asked, the overwhelming majority of American patients express concern about the privacy of their medical records." Sharona Hoffman & Andy

Podgurski, *E-Health Hazards: Provider Liability and Electronic Health Record Systems*, 24 BERKLEY TECH. L.J. 1523, 1557 (2009).

39. Moreover, "[b]ecause electronic medical records contain a person's most private data, we must work proactively to improve our hospital cyber security. The Health Care Industry Cybersecurity Task Force, which was created by Congress as a part of the Cybersecurity Act of 2015, explains that although a one-year identity protection plan is standard across other industries following a cyberattack, this solution is insufficient in the health-care space because 'it does not provide the patient with adequate protections based on the sensitivity, value, and permanence of their health care data, which is priceless.'" Danielle M. Mrdjenovich, Note, *Saving the Electronic Person from Digital Assault: The Case for More Robust Protections over Our Electronic Medical Records,* 58 Duq. L. Rev. 146, 157 (2020). "Electronic patient medical information is more valuable to hackers than basic financial information alone. Electronic medical records typically contain a patient's social security number as well as credit card or banking information. These records, however, also contain the most private and intimate details about that person's life. They can contain details about patients' sexually transmitted diseases, pregnancies, mental health records, and drug histories." *Id.*

40. This data breach exposed medical information. This information is highly sensitive, and Plaintiff's privacy was invaded when his PHI was accessed without his permission.

41. Plaintiff—like any reasonable person similarly situated—experienced extreme distress and anxiety upon learning that her privacy had been invaded in this manner.

**C. Plaintiff's information was exposed in the data breach, which caused her to suffer concrete injuries.**

42. Plaintiff Laureen Robinson has, from time to time, received medical treatment from Munson.

43. More specifically, in and around October 2025, Plaintiff had hip replacement surgery, as well as other orthopedic surgeries conducted at Munson facilities.

44. As a result of receiving that medical treatment, Plaintiff provided PII and PHI to Munson as part of that treatment.

45. On or about January 12. 2026, Plaintiff received a Notice from Defendant Munson informing her that her PII and PHI was accessed in the breach. See Exhibit 1.

46. Based on the representations in the Data Breach Notice, Plaintiff believes that information relating to her treatment was exposed to unknown third parties.

47. Plaintiff typically takes measures to protect her PHI and is very careful about sharing her PHI. Plaintiff has never knowingly transmitted unencrypted PHI over the internet or other unsecured sources.

48. Plaintiff did not authorize Munson to release her PII and PHI to any third party for any purpose.

49. Further, Plaintiff is unsure what exactly has happened to her PII and PHI, because Munson has not disclosed (or does not know) the true nature of the Data Breach, who may possess her PII and PHI, and to what purposes this information has been put.

50. Defendant continues to maintain Plaintiff's PII and PHI and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff had no relationship with Cerner and was never informed that any entity had received access to her PII and PHI.

51. As a result of the data breach, Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the data breach and have anxiety and increased concerns for the loss of her privacy.

52. Plaintiff also suffered actual injury in the form of damages to and diminution in the value of her personally identifiable and protected health information—a form of intangible property that she entrusted to Munson—which was compromised as a result of the breach.

53. Plaintiff also suffered loss of autonomy over her PHI and PII. The Data Breach deprived her of the ability to control who accessed her sensitive medical and insurance information.

54. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security number, being placed in the hands of criminals.

55. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to mitigate and address harms caused by the exposure of her data. Plaintiff is already at present risk and will remain at increased risk of identity theft and fraud for years to come, requiring ongoing monitoring of her financial accounts.

**CLASS ACTION ALLEGATIONS**

56. Pursuant to FED. R. CIV. P. 23(b)(2) and (b)(3), Plaintiff seeks certification of a Class defined as follows:

> All residents of the United States whose personal information was provided to Munson Healthcare and which was compromised in connection with the data breach beginning on or around January 22, 2025.

57. Excluded from the Class are: (a) Defendant and its officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b)

class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

58. *Ascertainability*. The Class can be readily identified through Munson's records, which is demonstrated by the fact that many class members have already been identified and sent notice letters regarding the data breach.

59. *Numerosity*. Based on publicly-available reports, as many as 100,000 individuals were affected by the Munson data breach. Therefore, the Class is so numerous that individual joinder is impracticable.

60. *Typicality*. Plaintiff's claims are typical of the Class she seeks to represent. Like all class members, Plaintiff's personal information was exposed in the data breach as a result of Defendant's failure to implement reasonable data security measures. Thus, Plaintiff's claims arise out of the same conduct and are based on the same legal theories as those of the absent class members.

61. *Adequacy of Class Representative*. Plaintiff will fairly and adequately protect the interests of the Class. She is aware of their fiduciary duties to absent class members and is determined to faithfully discharge their responsibility. Plaintiff's interests are aligned with (and not antagonistic to) the interests of the Class.

62. *Adequacy of Counsel*. In addition, Plaintiff has retained competent counsel with considerable experience in class action and other complex litigation, including data breach cases. Plaintiff's counsel has done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

63. *Commonality and Predominance*. This case presents numerous questions of law and fact with answers common to the Classes that predominate over questions affecting only individual class members. Those common questions include:

a. Whether Defendant had a duty to use reasonable care to safeguard Plaintiff and the Class's PII and PHI;

b. Whether Defendant breached the duty to use reasonable care to safeguard the Class's PII;

c. Whether Defendant failed to properly supervise its vendor who maintained Plaintiff and the Class's PII and PHI;

d. Whether that failure to properly supervise its vendor caused the injuries to Plaintiff and Class Members;

e. Whether Defendant breached its contractual promises to safeguard Plaintiffs and the Class's PII;

f. Whether Defendant is liable for negligence, gross negligence, or recklessness;

g. Whether Defendant's conduct, practices, statements, and representations about the data breach of the PII and PHI violated applicable state laws;

h. Whether Plaintiff and the Class were injured as a proximate cause or result of the data breach;

i. What the proper measure of damages is; and

j. Whether Plaintiff and the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

64. *Superiority and Manageability*. A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

65. *Injunctive or Declaratory Relief.* In addition, Defendant acted or failed to act on grounds that apply generally to the Class, such that final injunctive or declaratory relief as to any one class member is appropriate as to all class members.

**CAUSES OF ACTION**

**Count 1: Negligence**

66. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-65.

67. Plaintiff brings this count on their own behalf and on behalf of the Class.

68. Plaintiff and the Class entrusted their PII and PHI to Defendant who turned that information over to a third party. Knowing this, Defendant owed to Plaintiffs and the Class a duty to exercise reasonable care in handling and using the PII and PHI in its care and custody, including supervising and ensuring that its vendors maintained industry-standard security procedures sufficient to reasonably protect the information from the data breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

69. Defendant owed a duty of care to Plaintiff and the Class because it was foreseeable that Defendant and its vendor's failure to adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII and PHI—just like the data breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff and the Class's PII failing to properly supervise both the manner in which the PII and PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

70. Defendant owed these duties to Plaintiff and the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or

should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff and the Class's personal and financial information in the conduct of its business, and Defendant retained that information.

71. The risk that unauthorized persons would attempt to gain access to the PII and PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII and PHI, it was inevitable that unauthorized individuals would attempt to access databases containing the PII and PHI.

72. PII and PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

73. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII and PHI of Plaintiff and the Class and Subclass, which actually and proximately caused the data breach and Plaintiff and the Class's injury.

74. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and the Class's actual, tangible, injury-in-fact and damages, including, without limitation, theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the data breach.

**Count 2: Breach of Implied Contract**

75. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-65.

76. Plaintiff brings this count on her own behalf and on behalf of the Class.

77. As a condition of receiving medical treatment and related healthcare services, Plaintiff and members of the Class were required to provide Defendant with their personally identifiable information (PII) and protected health information (PHI). In turn, through its privacy policies, notices of privacy practices, and course of conduct, Defendant agreed it would maintain the confidentiality of Plaintiff's and the Class's PII and PHI, safeguard it from unauthorized disclosure or access, and comply with HIPAA and applicable industry standards.

78. Plaintiff and the members of the Class accepted Defendant's promise by entrusting Defendant with their highly sensitive PII and PHI in exchange for receiving healthcare services.

79. Plaintiff and the members of the Class would not have entrusted their PII and PHI to Defendant in the absence of Defendant's representations and implied agreement to maintain confidentiality and provide reasonable data security.

80. Defendant materially breached the contract(s) it had entered with Plaintiff and members of the Class by failing to safeguard such information. Defendant further breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff and members of the Class's PII and PHI;

b. Failing to comply with HIPAA, industry standards, and legal obligations necessarily incorporated into the parties' agreement; and

c. Failing to ensure the confidentiality and integrity of the electronic PII and PHI that Defendant created, received, maintained, and transmitted.

81. The damages sustained by Plaintiff and members of the Class, including identity theft, loss of value of their PII and PHI, and the time and money spent to mitigate the effects of the breach, were the direct and proximate result of Defendant's material breaches of its implied agreements.

82. Plaintiff and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

83. Plaintiff and members of the Class have sustained actual damages as a direct and proximate result of Defendant's breaches of its implied contracts.

**Count 3: Unjust Enrichment**

84. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-70.

85. Plaintiff brings this count on her own behalf and on behalf of the Class. Plaintiff pleads this count in the alternative to Count 2 (Breach of Implied Contract).

86. Plaintiff and the Class conferred a benefit on Munson in the form of payment for medical services. Munson also benefitted from the receipt of Plaintiff's and the Class's PII and PHI, which it used in connection with its operations and for its own business purposes.

87. Munson knew of and retained the benefits conferred on it by Plaintiff and the Class.

88. Under principles of equity and good conscience, Defendant should not be permitted to retain the value of the benefits conferred, including payment for services and sensitive PII and PHI, because Munson failed to implement reasonable data security measures to safeguard such information. Plaintiff and the Class would not have provided their PII and PHI had they known McLaren would not adequately protect it.

89. Munson should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds it received as a result of its misconduct.

**PRAYER FOR RELIEF**

90. Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a. Certification of the proposed Class;

b. Appointment of the undersigned counsel as class counsel;

c. An award of all damages, including attorneys' fees and reimbursement of litigation expenses, recoverable under applicable law;

d. Restitution or disgorgement of all ill-gotten gains; and

e. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

91. Plaintiff demands a jury trial on all applicable claims:

Dated: March 31, 2026

By */s/ Andrew P. Abood*
**ABOOD LAW FIRM**
Andrew P. Abood (P43366)
Jeffrey L. Abood (P72607)
*Co-Counsel for Plaintiffs Samuel Steele and Barbara Sherrod and the Class*
246 E. Saginaw Street, Suite 100
East Lansing, Michigan 48823
P: (517) 332-5900
E: andrew@aboodlaw.com
E: jeff@aboodlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
4200 Regent Street, Suite 200
Columbus, OH 43219
Tel: (614) 578-5582
Email: mboyle@bgandg.com

Peretz Bronstein (*pro hac vice* to be filed)
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com
*Counsel Plaintiffs Samuel Steele and Barbara Sherrod and for the Class*